Our first case is Henry v. Wilmington Trust, number 21-2801. And I apologize about us being a little bit late. Our last case went a little longer than expected. Sorry about that. So we'll hear from Appellant's counsel. Good morning, Your Honors. Good morning. May it please the Court, my name is Sarah Adams, and I represent the Appellant Wilmington Trust in this matter. With me is Mark Kneebrig, who represents Appellants Croft and Sass. But I'll be speaking on behalf of all the appellants this morning. I'd like to reserve four minutes for rebuttal. That will be granted. Thank you. There's a single issue the Court must decide today, and that is whether an arbitration provision must be treated differently from every other type of provision in an ERISA plan document such that a plan sponsor must give notice and receive individualized consent from each plan participant before that plan provision can take effect. The answer has to be no for reasons I'll discuss. And so the decision of the District Court must be reversed. Can you help us out with this language from the Granite Rock case? The Supreme Court said, we have never held that the federal policy favoring arbitration, that's in brackets, that's my interpolation, overrides the principle that a court may submit to arbitration only those disputes that the parties have agreed to submit. In other words, it looks like the Supreme Court is saying FAA policy favoring arbitration does not override the fundamental principle that parties are required to arbitrate only those disputes that they have agreed to submit to arbitration. Judge Rudin, that's a very fair question. And the answer is that what the FAA requires by its plain terms is for the court to look first to see whether a valid contract has been formed. So all of the case law thus far speaks in terms of consent because in the context of typical arbitration agreements where you're analyzing the issue of formation under state law, of course consent is required. And you agree that Henry did not consent to arbitration, right? He did not affirmatively consent in any way. I mean, I thought factually that that wasn't in dispute. The plaintiffs asked for discovery on the issue of whether he received notice. The court below did not rule on that. We argued that notice and consent is not required. Okay. So your assertion here is taking it as a given that he didn't consent, right? You're saying because it just doesn't matter. It's not required. I believe under the district court's ruling, if you were to tell us that consent is required, I believe Judge Noriega left open the door for us to prove that. That he did consent? Yes. By participation. If there were adequate notice. So you're saying, so is constructive notice good enough? Your Honor, respectfully, I think that's not the issue when you're dealing with an ERISA plan. And what this court told us in the Hooven case is that, look, when we're dealing with an ERISA plan, sure, it's one thing to say contract principles are informative. But we can't use those contract principles to upend this careful balance that Congress has created. We touched on unilateral contract principles. Makes sense, probably, in this circumstance. But even then, doesn't notice play in, in some respect? If the court finds the unilateral contract principles helpful, then I think we have to go back and ask, what happened at the very beginning of this plan? And this is a plan that was simply offered to the participant. And offer is even too strong a word. He's simply enrolled by virtue of satisfying the employment provisions of the plan. He didn't have the choice to say, no, thanks, I don't want your retirement plan. He didn't even have that choice back then. So under ERISA, he was automatically enrolled. If you want to say that that's, that he consented because somehow he didn't disavow participation, which isn't even a concept under ERISA, you could. So wait, wait, wait. Ari, is your ultimate position that it's not him continuing his employment that constitutes an effective consent? It really is that ERISA, in an ERISA context, uniquely, arbitration is no longer a matter of consent. Consent just has nothing to do with it, because it's ERISA. That's the bottom line for you. That is my number one argument. If you do not agree with that, then I think the application of the unilateral contract principles, we still come out right. Stick with your first argument for a minute. Do you have any case that says that? Specifically, I would direct you to, there's a helpful discussion in a case out of the District of Arizona, Robertson v. Argent Trust Company, from this summer that dealt with this issue and laid out how, yes, the courts and all their arbitration decisions have been discussing the matter of consent, because that's what you typically do in a contract case. But the real question that the FAA puts before us is, was there a valid contract provision? And to answer that question in the context of ERISA, you go and look whether there's a valid plan amendment or a valid plan formation. That's how these two statutes can work together so that the fundamental principle of ERISA, enforcing a plan document as it's written in the fundamental principle of the FAA to enforce arbitration provisions, you get to the same result here and give effect to both of those core principles. I thought your argument was, and I might have just misunderstood it here, you said on page 19 of your reply brief, there is simply no congressional command in ERISA stating or even suggesting that ERISA is differently situated than other federal statutes where the Supreme Court has upheld application of the FAA. So I read that and thought, oh, they're saying that the FAA applies in the ERISA context just the same as it does in every other context. That's how that sentence read to me. Are you now saying, no, that's not right? ERISA is a unique context, and so it has to be treated differently. Which is it? There are aspects of ERISA that are unique. But the fundamental premise of the FAA that says presumptively arbitration provisions are valid, irrevocable, enforceable, except unless we think the contract wasn't validly formed. So this sentence is, what did you mean when you said there is no congressional command in ERISA stating or even suggesting that ERISA is differently situated than other federal statutes? So that discussion is about looking for a contrary congressional command in ERISA specifically saying that arbitration is not permitted. Yeah. It doesn't say that. Nor does it say an ERISA is different and special and so consent doesn't matter. It doesn't say that either. I mean, I thought this sentence was accurate. There's nothing suggesting that ERISA is differently situated than other federal statutes where the Supreme Court has upheld the application of FAA. Nor is there anything suggesting that ERISA is differently situated than any other circumstance where arbitration and the FAA are in play. What are you pointing to that makes us think ERISA is so different that this is the one place in the universe of American law where arbitration can be enforced without notice and consent? Your Honor, in non-arbitration context, the courts have said that ERISA plan provisions, which is a contract in a sense, are enforceable regardless of notice and consent. So then the question is, what's different about arbitration? Now plaintiffs tell us, well, arbitration is a creature of consent. So is every other contract under traditional contract formation principles. So we have that what's special and what's not problem on the other side too. And so I think we have to go say, what does it mean to form a valid contract in this context? And there is no question but that this ERISA plan document was validly created and validly amended. Even in unilateral contracts, don't you have to give notice? You do. And that's where, as the court said in Hooven, sometimes this unilateral contract principle falls apart a little bit when you're dealing with ERISA. And it has to take a back seat to ERISA. So you really don't have a backup plan. I'm trying to figure this out because you're saying that's our first argument, that ERISA is different. But our backup plan is it's a unilateral contract. But then when pressed on it, you say it's a unilateral contract, but that falls apart. So you've got to go back to it's ERISA. I'm feeling like I'm getting a little whiplash here, Ms. Adams. Okay. Help us out. So what I started to say before, going back to the original formation of this plan, Mr. Henry was automatically enrolled once he satisfied the requirements for participation. So presumably he had notice then. Was there consent? Well, he didn't flee from the plan somehow, but that's what has to be consent under ERISA. And what did he consent to? It was a plan that the plan sponsor had the unilateral right to amend. And the Supreme Court said in – Are we on a – I'm sorry to interrupt, but we're almost out of time. Are we on a factual basis now where you're saying there was notice? Because that's what it sounds like you just said. I'm talking about originally at the formation of the plan. But there was – but this arbitration piece wasn't in there then, was it? No, it was not. Okay. So then there wasn't any notice, right? But what he got when he formed that original contract was a plan that could be amended. So he should have expected someday there might be an arbitration, and he should have anticipated that could happen, and that constitutes effective notice? No. So what I'm saying is the Supreme Court in Curtis Wright v. Schooney-Yongen said that saying a plan sponsor can amend freely whenever they want, that is a valid plan amendment procedure under ERISA. And so that makes the subsequent amendments valid and binding in the plan document that is the contracted issue here. Could you address the effective vindication doctrine here? Sure. And I would start, Your Honor, by saying that's an exception, and it's important to start with what the rule is before we talk about the exception, because I know you're going to hear a lot about the exception from my colleagues on the other side. So the discussion has to start with EPIC systems. And there the Supreme Court reiterated that there must be a clearly expressed congressional command within the statute to say that the right to class or collective action may not be waived. And I realize I'm out of time. No, no, please answer. And the court even sounded a bit exasperated that it has to keep rejecting these attempts when this type of clear congressional command is lacking in the statute. And it said in many cases over many years this court has heard and rejected these efforts. And then it listed off all the statutes that it said no. So we have to think ahead. If this case or one like it that are brewing around the circuits ends up before the Supreme Court, it's awfully hard to predict that court saying you've finally done it, you brought us the one case, even though there's no congressional command in the plain text of ERISA, you found the one. No, it's going to add ERISA to that list of Clayton Act and Sherman Act and ADEA and securities, all of that. And there's ERISA at the end of that list. And I'll speak more to the doctrine during my rebuttal time. Go ahead. I had one question as well. Answer if you would what were to do with this language from our Williams case. We said an agreement to resolve disputes in a forum decided by arbitration will be enforced only when a litigant can pursue his statutory rights there. Right. Okay. And you'd agree, wouldn't you, that if he goes into arbitration, he can't vindicate his statutory rights because he can't make a class claim. He can't sue in a representative capacity, right? No, I wouldn't agree with that. Under your arbitration provision, he can? I agree with that he cannot bring a class claim. And isn't that a statutory right that he's got under ERISA? It is not the substance of his ERISA right. Is it a right that is absolutely exercised all over America all the time in these courts under the ERISA statute? Yes, and the question is whether that right is waivable. And it is because that's not the substantive core of his right. It's waivable. How does he waive it if he doesn't? I mean, a waiver is the relinquishment, the knowing relinquishment of a right. And your assertion is he doesn't even get notice. Perhaps waivable is the wrong term then. But it is able to be modified through an arbitration provision, just like all of the other statutes that the court dealt with in EPIC systems. I guess this is a follow-on, but if we assume that the class action waiver is void, is it inseparable from the rest of the arbitration clause? And does that mean the whole clause fails, falls? Yes, it does. Okay. All right. Thank you. Thank you. All right. We'll get you out of rebuttal. Thank you, Chief Judge Garrison. May it please the Court. Peter Stris on behalf of Mr. Henry. I feel compelled to briefly begin with jurisdiction, because as this Court held in Devon, if a motion does not at least request an order directing that arbitration proceed, then the denial of that motion is not appealable under 16A1. And here, defendants admit that they didn't seek an order directing arbitration because the district court didn't have authority to compel arbitration outside of the district. So under Devon, they simply have no right to an interlocutory appeal. It may be that we have jurisdiction under the Clara Water Doctrine, but there are other things as well. But your point is well taken. I appreciate it. And to be clear, we have no dog in a jurisdictional fight. I'd be thrilled if the Court reached the merits and moved forward, but I felt compelled to address that. So turning to the merits, with the Court's permission, I'd like to begin with prospective waiver, unless the Court would prefer that I begin with consent. Well, I don't want to burn too much time, but I don't think we can just say, hey, there's no jurisdiction, but let's not worry about that. You better be prepared to discuss this a little more with us. We have a case, O'Connell Carr, going back to 1974, that says we can't compel arbitration in a jurisdiction outside our circuit, right? And this was the arbitration in Virginia, clearly outside our circuit. So wasn't a motion to dismiss, as opposed to a petition to enforce arbitration, the only mechanism available for Wilmington Trust to proceed with its request? So two answers, Judge Jordan. No, I reject the premise. I'll tell you why. And two, it shouldn't matter to jurisdiction. So the reason I say no is they could have moved for a stay under Section 3. They chose not to. Instead, they sought what the Court referred to in Devin as the over-favorable remedy of dismissal. Secondly, there's a forum selection clause in the arbitration provision, so they could have moved under Section 4 of the Federal Arbitration Act in the Western District of Virginia to compel arbitration under Section 4. So with respect, I think they had other options. My second answer, though, is it shouldn't matter to jurisdiction because in Devin, this Court surveyed various approaches. And I admit that if we were in the First Circuit or the Sixth Circuit, there clearly would be jurisdiction. But the approach that this Court took in Devin was that basically the inquiry turns on the relief requested. And if you're not requesting an order directing arbitration, these jurisdictional statutes are strictly construed, particularly when they authorize interlocutory appeals. So I felt compelled to bring this to the Court's attention because as an officer of the Court, I simply don't think there is jurisdiction. But if, as Chief Judge Chigars pointed out, you think there's a basis for it in some fashion, I'm happy to turn to the merits because I think affirmance is certainly warranted. So to begin with prospective waiver, and the reason why I would like to begin there is because the arbitration clause here is a textbook, textbook case of prospective waiver because what it does is it bars ERISA remedies that Congress expressly made available to participants like my client. Before you get too deeply into this, even if you dispute that this could be, this clause could be enforceable, do you agree that the proper procedure was followed to amend the plan? So I don't know for sure because we sought discovery and we cited Gidati. They opposed it. And so I can't tell. The affidavit that we put in on behalf of our client says that he never received any notice, he never saw a summary plan description, he never saw a statement of material modification. Well, according to the plan itself, did they do the right thing or did they misstep under the plan? Because they have ---- My honest answer as an ERISA attorney is I can't tell. It shouldn't matter as a legal matter because even if they followed all of the rules, it has no bearing on our prospective waiver argument and it has no bearing on our consent argument. But I'm answering the question as it comes to me, which is from what I can see on this record, it's not even clear to me that they followed the proper procedure under the plan. So as to prospective waiver, the starting point has to be what are the remedies that my client has requested. And there's a bunch. Loss restoration, profit disgorgement, rescission of the transaction, invalidation of the indemnification agreement, which is absolutely essential, and of course is a default appointment of an independent fiduciary. Every one of those remedies, every one, are classic remedies that you get under 1109 of Title 29 via the private right of action that's found in 1132A2. And the arbitration clause here prohibits every single one of them. And so if you look at the clause as an initial matter, I'm talking about Section 1401B, it's at A166. It expressly forbids any representative claims. And this is important because it is, there's an or clause. It prohibits representative claims or claims brought on a class basis. And there's some conflation going on in my friend's brief, and I want to be very clear on this. We don't dispute that ERISA claims are arbitrable. We don't dispute that class action waivers are valid. If they had written a provision that said you have to arbitrate and you can't bring a class action, we wouldn't be here. That would be enforceable. We would have filed an arbitration. We would have sought every single remedy that we're seeking today in court, but not on a class basis. That's not what's at issue here. If they'd done that, when and how? To the consent question, in other words. Yeah. Well, if they had done that after providing some notice such that my client did something to manifest agreement, then it would have been enforceable. What would be enough to manifest agreement? Continued employment? I'm not quitting? Continued employment, assuming he's receiving benefits under the plan. So I want to be clear what I mean by that. I often hear the phrase continued participation, and that's a very dangerous term. Because when you're in an ERISA plan, like Mr. Henry, let's say you've left the company, you've retired, you're still in the plan. So it can't be that just being in the plan means you manifest dissent because then no one could ever disagree. There's literally nothing you could do. But continued participation where you're accruing new benefits, absolutely. It's like any other contract of adhesion. I don't dispute that contracts of adhesion are fine. If you give someone notice, they can't negotiate the arbitration provision. So the end of this is not consent in the traditional way we think of consent. It is notice and then acceding to what the notice says by staying in your job. But I think that is the traditional way we think of consent in adhesion contracts. Take Epic Systems, for example. There was not an issue of consent. But if you look at the facts of Epic Systems, the company sent an e-mail to every employee with a link that said, here's the arbitration provision. People have the ability to click and link on it. And this happens all of the time. That is consent. It's consent because you give someone notice, and then through their behavior, they do something from which you can manifest, you know, you can understand that there's a manifestation of agreement. But if you haven't told someone, pardon me. Then answer, if you would, this statement from page 15 of the Wilmington Trust reply brief. Under Mr. Henry's approach, consent must be obtained before any plan amendment which is in direct conflict with ERISA. They say that, which, comma, which is in direct conflict with ERISA. I read that poorly. They're saying you're requiring there to be consent before they can amend their plan, and ERISA forbids that kind of approach. Yes, certainly not. So let me take that apart because I think there's some confusion, and I don't want it to be confusion about what our position is. So on the issue of consent, here are some starting premises that I think are important. The FAA requires mutual consent to arbitrate. I think that's a fair starting point. One party has the unilateral discretion to add a provision to modify it. That's illusory. The cases are legion. That's premise one. Premise two, 30 years ago, this court in Pritzker, in overruling Barron Claw, held that the only reason you could agree to arbitrate statutory ERISA claims is because of the FAA. Okay? The reason that's important is a defendant in a case like this has to invoke the FAA to seek arbitration. But if you invoke the FAA, you're also invoking its floor of mutual consent. So it doesn't matter how agreements are made or what the statutory defaults are under ERISA in other settings. That's simply irrelevant. What's relevant is under the FAA, because we start with Section 2 of the FAA, the Supreme Court could not have been clearer if they'd been clear about anything in the line of cases. It's a provision in a written contract shall be valid and enforceable. That comes out of Section 2. It's a creature of contract. It's a creature of consent. That's why we look to general principles of state law for contract formation and interpretation and scope. All right. Then your problem with what is being asserted here is, coming back, just trying to make it real simple, is it's not that they couldn't have amended their plan. They certainly could have. And it's not that they couldn't have amended their plan to say there's going to be arbitration, and it's individual arbitration, no class-wide arbitration. They could do that. But they had to give notice. If that were how this had gone down, you wouldn't be here. That's correct. And let me put a finer point on it. If you amend your plan, first of all, you have the provision in the plan in the first place. You could start your plan with an arbitration provision. Or if you amend your plan, as long as a participant is aware of that and continues in the plan because they're accruing benefits, they have consented to the provision. That's on consent. Then as long as the provision doesn't prospectively waive remedies, just like you can't say you can arbitrate, but you can't get treble damages under the Antitrust Act. You can't get punitive damages. You can't get equitable relief. That's a classic prospective waiver. The Supreme Court just last term in Viking River essentially applied the doctrine to representative claims under POGGR. Justice Alito said, yeah, well, there's the class action part of the case, the collective action that we have a problem with. But the core unitary representative action, you can't waive that. You can't by arbitration say that you don't get that. So there's really two levels of problem here. The first one is they didn't tell Mr. Henry that there was an arbitration provision at all, so how could he possibly have agreed to it? And then the second problem is even if there were consent, this arbitration provision itself is wholly unenforceable. And to your question, to my friend's question. Only unenforceable why? Because it prospectively waives each of the remedies that are available under ERISA. And to the question, Chief Judge Chigars, that you asked my friend, there's a non-severability clause. And so what that means is not only can the arbitration provision not be enforced with regard to these remedies, but we actually can pursue a class action in court because the entirety of the provision is stricken. Can I ask you a question? Is it concerning at all to you? I read your brief, frankly, before I got to the district court opinion this time. I was surprised to see how short, it was in a footnote, as you know, this whole issue, and even that wasn't all that clear. Do we really have enough to go on to decide it on that basis? So not only do I think the answer is yes, I would strongly urge you to, and let me explain why. So we briefed at length the prospective waiver issue in the district court. In fact, the judge, she ordered a supplemental briefing on the issue. So we certainly preserved, there's no waiver, there's no forfeiture, we preserved the issue. The issue is incredibly important. It's recurring. I think district courts would benefit from guidance on the issue. But most importantly, the footnote is very troubling because the footnote, the judge decided not to reach the issue. We're thrilled that she agreed with us on consent, and we agree. But in not reaching the issue, she appeared to accept the conflation of defendants that this doctrine, what I'll call the epic systems doctrine, which has nothing to do with prospective waiver. It's the standard for when you're trying to claim that you can't arbitrate at all or that you can't have a class arbitration where the statute trumps the FAA. We never made that argument. The judge appeared to accept that and suggest that if she were to reach prospective waiver, we would lose. So that's why, to be perfectly candid with this court, if the court's going to reach the merits, obviously the court can decide it doesn't have to reach alternative grounds. But we preserved this issue. We think it's incredibly important. I mean, we're litigating it presently in four circuits. We prevailed in the Seventh Circuit. It's pending in the Second and the Tenth. And we just think it's a textbook case where the arguments against it, frankly, are bankrupt. Well, when you said we prevailed in the Seventh, because I do want to ask Ms. Adams on rebuttal to speak to Smith. Can you just talk for a minute about, you know, did the Seventh Circuit get it correct right down the line? Is that the blueprint that you think we should be following? So here's my answer on that, Judge Jordan. So the arbitration provision there was identical. We pressed the same arguments. There was also consent at issue. We prevailed on there. The court ducked all of the issues, which they had the right to, and decided on incredibly narrow grounds that the non-monetary remedies that were waived, they are fiduciary removal and appointment of an independent fiduciary or prospective waiver. Did the court get that right? Absolutely. The dicta that follows, frankly, if I'm being perfectly candid, I don't know how the court would have decided on whether there was prospective waiver on loss restoration. I frankly think the panel was not of the same mind. But it didn't really have to reach those issues, did it? It didn't, nor would this court, because my point is that there's prospective waiver basically across the table.  or invalidate the indemnification agreement or appoint an independent fiduciary. You need not reach the question of whether slicing and dicing loss restoration or profit discouragement is prospective waiver. We think it clearly is. But my point is, if ever there were a case of prospective waiver, I mean, this is the picture that you would see in the dictionary under prospective waiver. It took the remedies in the statute and said you cannot seek them, you cannot get them. Thank you. Thank you, Counsel. Your Honors, I would agree with my opponent on one principle, and that is that if you should choose to reach the effective vindication argument, we did fully brief it below. We've argued it. It is available to you should you choose to reach it. Why don't you start with jurisdiction where the other side did? Or is this a case we just have to dismiss because it never should have been addressed? No, Your Honor. And I would refer you to the Bacon case, which says, let's look at whether there's gamesmanship going on here. And clearly there was not. We were explicit in our brief to the district court that the reason that we were not moving to compel arbitration is because of the provision in the plan document and the arbitration provision that says you had to do that outside of the court's jurisdiction. Well, you heard what your colleague there across the aisle, Mr. Stris, said, which is, hey, they could have sought a stay. They could have taken another step and perhaps moved for arbitration in Virginia. Maybe, you didn't mention this, but maybe you could have moved for a transfer. I mean, what's the answer to those? No, perhaps the court could read the FAA so strictly that we would be required to jump through all those hoops. But I would point out that the FAA speaks of a motion to compel arbitration. And the federal rules of civil procedure don't call any motion a motion to compel arbitration. And different courts treat those motions differently. They want them presented under different names. They want them done differently. And so if you provide a hyper-technical reading of the FAA's appeal provisions, then you'd be encouraging plaintiffs to forum shop so that they could avoid the appeal on the arbitration issue. There is no gamesmanship here. The district court judge literally took the sentences out of our brief and said, you know, why we were not moving to compel arbitration. And I appreciate Mr. Stris for bringing it up, but I don't think it's a concern here. Okay. I know you have things you want to talk about, but would you mention your view of Smith? Why is Smith wrong? Yeah, absolutely. If Smith is right, why don't you lose? Smith is mostly right. So the Seventh Circuit did, I think, and I wouldn't dismiss it as dictated, but it was all of the reasoning leading up to the ultimate conclusion. The Smith court's discussion of the intersection between Mass Mutual, LaRue, and how it's possible to, or how it's appropriate to think of a one participant's claim as being the core of what they're entitled to under ERISA, the Seventh Circuit got that right. And it was only, as Mr. Stris pointed out, it was very narrow, it was only the removal of a fiduciary that seemed to cause the Seventh Circuit to go the other way. That situation is not presented here. Wilmington Trust has not been the fiduciary of this plan for years now. And, you know, Mr. Stris actually threw that clause into his brief in a couple of places. We sought things like removal of the fiduciary. No, they did not seek removal of the fiduciary because the fiduciary is already long gone. What about all the other forms of relief that they say are statutorily guaranteed on a plan-wide basis that you're saying he's not entitled to, and they're in character just the same as the removal of the fiduciary? Many of them are not in character the same because many of them are divisible. And I would caution the court against allowing plaintiffs to sort of catch-and-sink these complaints as they do asking for all types of equitable relief. 502A3 of ERISA, as the plaintiff points out, is a catch-all provision. And so I think rather than striking down anything that says you can't get equitable relief because it's plan-wide, the court needs to... Well, you guys drafted the provision, the non-severability provision, right? I mean, isn't that on you? I wasn't speaking about severability, so I'm not sure I follow you. Here's what I mean. I mean, it sounded like where you were going with this was they've thrown everything in the kitchen sink in there, and they shouldn't be allowed to do that. You shouldn't be paying attention to that. Maybe I misunderstood where you were going with that, and I should let you more fully answer. But if you were going where I thought you were, I think the reasonable answer to your concern is you didn't have to put in a non-severability provision that would say, if we're wrong on one thing, we're wrong on everything because you can't take this out. You're looking at... I understand what you're saying. Certainly it could have been drafted differently, and as this area of law evolves, I'm sure plan sponsors will draft them differently. My point was that what the court should do is look specifically at the type of relief that's actually at issue in the case. So not everything that's thrown in there. Take, for example, the argument about rescission. How do we know at this stage what's really at issue in the case? Well, I think the first you ask yourself, can these monetary remedies actually be divided up? What the complaint says is, at the outset, in the first few paragraphs, Mr. Henry wants losses to the plan. He wants his share of the money. And things like rescission, is that really what Mr. Henry's asking for? Rescission undoing the prohibited transaction, undoing the entire stock transaction that created the retirement plan and taking it away from all the participants? No, they put it in there because that is a theoretical possibility to remedy a prohibited transaction under ERISA. If they're talking about rescission the way some courts use it and really just discussing about the difference between the purchase price and what it should have been, that's losses, that's damages, that's what Smith and I think I heard Mr. Stris say, you could waive that right and you could allow Mr. Henry to only bring for relief to his own account. So you're suggesting we could write an opinion that says, yeah, this would be a problem if you were asking for rescission. And you did ask for rescission, but we don't really believe that's what this case is about. So I think the court would look at what are the types of claims alleged and what actually happens in, you know, we're litigating these ESOP cases all over the country. What actually happens? Are the transactions being unwound and the whole plan goes away? No. So, you know, speaking about gamesmanship earlier, they can't get around this by throwing in, oh, yeah, I want some plan ride relief. It's really not what's at issue at the case. I think that's just too far. And one last point, because I know I'm out of time, I would say to look at the core of what it means to vindicate an ERISA right. And the Supreme Court in the Gilmer case said, hey, you know what, we're okay with some restriction of these rights because we've got the EEOC here who can also come in and take care of anything that's given up here. And the same is true here of the Department of Labor who is very active in this space. So to the extent there's a concern. The Department of Labor took the position that they did in the Second Circuit. Should that have any weight on the effective vindication exception? Directly, no, Your Honor. What the U.S. Department of Labor thinks about ERISA in this context doesn't matter. Well, I think if it conflicts with the Supreme Court's authority and the text of ERISA, then their opinion has to fall by the wayside. Okay. All right. Thank you, counsel. Thank you. We thank all counsel for their excellent briefing and oral argument today. We'll take the case under advisement and thank counsel for coming today. It's great to be here.